Case numbers 24-5319, 5320, 5341. Chelsy Eastep v. City of Nashville TN et al. Oral argument not to exceed 15 minutes per side. Melissa Roberge, for the appellant, you may proceed. Good morning, your honors. Melissa Roberge on behalf of the defendant officers. I would like to reserve four minutes for rebuttal. When officers reasonably perceive a deadly threat to themselves, their fellow officers, and a highway full of onlookers, the law grants them qualified immunity for their decision to use deadly force. And that grant of qualified immunity extends to every officer and to every shot fired when the shots come in quick succession and in a condensed five-second time frame. Let me say that differently. Officers have at least five seconds to perceive the threat, act on it, perceive any new information, make a new decision, and then act on that decision. So based on your concept of five seconds, is that just a black and white, if it's five seconds, so long as there's whatever happens in that five seconds is okay? What perceives the five seconds, your honor, is important. What perceives what happens within that five seconds is also important. And this isn't a new rule that the officers are advocating for. It's a rule that dates back to Utland and then Mullins and then three months ago in Najee. So Utland stated officers have a few seconds to respond. Why would we adopt a five-second rule? That doesn't make much sense to me. I mean, aside from the other officers, when I watched the video and when I watched Officer Murphy, everybody else had stopped shooting. Somebody else had yelled ceasefire twice. He was on the ground. It just struck me as incredibly gratuitous. So to say that they don't even state a claim with respect to him, I find that quite astonishing. Your honor, you're uncomfortable with deciding the constitutional violation question. The court can pivot to the clearly established. But why wouldn't we say the rule is clearly established that you can use deadly force if there's a probable cause of a threat? But I think you would concede that we have clearly established additional rule that you have to cease using deadly force once the threat has gone away. And then the question of whether the threat has or has not gone away is a question of fact in my mind. And here I would think just the complaint, taking out complaints, allegations, that's true. And looking at the video, a jury could answer that question of fact, or at least we don't even need to say a jury. You know, at the summary judgment stage, it's plausible that the question could be answered that the threat had gone away at the time that officer. So I would direct your honor to the Mullins case and that case after kind of a scuffle with the officer, the officer said, drop your gun. And what the suspect did was throw the gun over the officer's head. He was armed for two seconds. The first shot was fired. Another three seconds passed and the second shot was fired. And what the court found in the court decided on the constitutional violation prong. And what the court found was that even at the time of the last shot. So five seconds at the time of that shot, the officer would have been acting under the circumstances or under the perception that he was still armed. So it's important to put yourself in that moment. We know now with the benefit of hindsight that Mr. Estep wasn't armed. But what we what the officers knew in that moment was that Mr. Estep had been hiding his hand in his right hoodie pocket. And after 30 minutes of tense negotiations, he changed the dynamic. But would you would you agree that what I said was correct on the law? That it is clearly established that officers can't have must cease using force if the fact if the threat has dissipated. I would agree that that is a broad general proposition of the law, but qualified immunity requires a more specific to be applied. In their pleadings, didn't they say that the threat actually had ameliorated, there was no longer a threat of imminent harm? So if that broad rule applies and these specific facts have been alleged in the complaint, which they're plausible. I didn't see anything in the video that blatantly undermined that statement. Then don't we have to accept that? Your Honor, I think that's the wrong question. I think the question isn't had the threat ended. It's what would a reasonable officer perceive? And would the law tell every reason? Isn't that. The issue is, is there an imminent threat of harm for the officers? And so I hear what you're saying. Officers get an opportunity to make that assessment. It sounds to me like you're saying that there's some time where we just there's almost a guinea. Within this time, you assume that whatever that they can't make that that shift during such a short period of time. Is that what you're saying? I wouldn't say that an officer can't make the shift. But the question is, would every reasonable officer know that they have to make that shift within five seconds? Would they know that their decision time is only four seconds? I'll note in the time that it took. I guess that's what I'm not following. It's really about the threat, isn't it? It is about the threat, but it's also about the perception of the threat and when it ends. At the time that the officers are shooting, nobody knows which gunshot belongs to who. And so they're operating under those tense circumstances. Would you say that it is clear from the video that the last two gunshots are attributable to Officer Murphy? Yes, your honor. And would you say that they are after the ceasefires yelled from watching the video and hitting play and pause multiple times? It appears that they seem to happen simultaneously. But if it is after it is less than a second. So it seems like you've raised an important question about, you know, how quickly do we expect officers to perceive in a given situation that they need to cease to stop? I mean, even if we say it's OK in the first instance that there was a threat of bodily harm or deadly force, that it was OK to shoot. There's there's a point that we would expect officers to stop. Why is it not a question in this case? Like what a reasonable officer like in this situation, how they would be able to perceive it and what would be what would be reasonable to ask an officer to stop? Like, for example, if there was a ceasefire yelled. So I think your honor's question goes to the first prong of qualified immunity. What what could be reasonable? Where where are we going to draw that line? But I would encourage the court to look at the cases that were cited by the plaintiff to clearly establish the rule that they want applied here. And again, that rule is that within five seconds, every reasonable officer would know that they would have had to have perceived that the threat had ended. And the cases that they cite are factually distinguishable. Let's start with Baker. Baker isn't even a deadly force case. There, after a brief foot chase, the individual walked out of the bushes holding his hands up. That told the officer that he was unarmed and compliant. So I guess I'm confused about the clearly established prong. And as much as we have case law saying, you know, if a person is completely down and no longer a threat, you cannot shoot them. Would you agree that that's clearly established? I would agree that that is clearly established so long as the officer perceived that that had happened. So that's a question here, whether the officer had perceived that had happened. That seems like a really a fact question and maybe one that that a jury eventually would have to figure out. But it doesn't seem like whether a reasonable officer would have perceived this is is kind of like a as a matter of law question. That that isn't specific to a given circumstance. Your Honor, I actually want to put a finer point on my previous answer. It's what would every reasonable officer have perceived? So the individual, the Fourth Amendment inquiry is much more objective. And if I can take from the panel's question, it appears that the concern is with Officer Murphy's final two shots and not necessarily the other officers. And for Officer Murphy, if you look at his body cam, he is getting in position to be ready to fire. So at the time he's fired, a reasonable officer already would have made that decision based on perceiving the threat that Mr. Estep posed to the other officers. The law grants him qualified immunity in those circumstances. And the case that we talked about, the Baker case, the next case that the plaintiffs point to is the Russo case. That is factually distinguishable. There are three different volleys of shots in that case. The first not constitutionally problematic. An individual ran out of the apartment holding butcher knives. The officers used deadly force. Then the individual fell down the stairs and then the officers waited 10 to 12 minutes. 10 to 12 minutes, objectively, is enough time to reassess. But five seconds is less time than it took for me to introduce myself to the court this morning. Can I ask you just briefly? I don't want to talk about Officer Murphy now. I want to talk about the other officers and what has to be pled in a complaint where there is uncertainty over which of the officers fired a shot. So suppose hypothetically it was 30 seconds later, everybody would have agreed it was a violation of clearly established law. And it was one of three officers. But we don't know which one. Can they file a complaint against all three officers and allow them to obtain discovery to determine which of the officers fired this gratuitous shot? Or how does it work at the pleading stage when there may be an excessive shot, but you don't necessarily know kind of in the chaotic moment which of the officers shot it? I would say in that instance, the plaintiff does have the pleading burden of identifying which officer violated their rights.  Wouldn't it be, wouldn't it? So I had this case at summary judgment and I agreed with the premise you're making at summary judgment because I thought they had a duty to raise a genuine issue of material fact, which means they could prove their case by a preponderance of the evidence. And if it was between two people, you couldn't prove your case by 51% because it wasn't equally likely. But at the pleading stage, why wouldn't you say it's just plausible that any one of the three did it and then allow them to get discovery? If they can't get discovery to figure out the identity of the culprit, then perhaps it's summary judgment. But at this initial stage, why shouldn't they be allowed to have discovery? Because to unlock the doors to discovery, you have to allege that each particular officer violated your rights. So in the hypothetical that you're proposing, maybe one did, but they haven't gone through the effort of identifying that person. But we actually don't have that problem here because they've identified Officer Murphy and all of the shots happened within those five seconds. And no clearly established law told the officers that they had to react and stop shooting faster than that. Okay, thank you. Good morning, Your Honors. David McKenzie here for Chelsea East Step. And I'm taking off my glasses because I'm just refreshed. Basically make my arguments for me. I find it particularly scary some of the issues that have been raised by the appellants in their briefs. Yes, ma'am, I'm sorry. I find it particularly scary some of the issues that were raised in the appellants' briefs, especially with regards to this five-second rule. And Judge Davis, you brought this up just perfectly. What if there was a clear fatal shot that had happened within the first second of a police volley? Does that allow the police officers any carte blanche four seconds to do whatever it is that they wish to do from that point forward? Would we as a society want to justify such unfettered bloodlust and give that to governmental officials? And that is exactly what I keep hearing over and over. It was listed in their opening brief. It was listed in their motion in opposition to our motion to dismiss. And so we talk about these issues from a very— In fairness to your friend on the other side, I think some of the argument here and the argument that maybe you want to take on is that once people perceive a deadly threat, that there's just some reaction time. And that you're in the motion of responding to it. And that maybe there's some reaction time to both respond and then both to disengage. And so it might not be bloodlust or something like that happening in five seconds. It doesn't mean that maybe we don't go on to summary judgment and figure out what happened. But I think your friend's argument is much more nuanced. I do. I agree with Your Honor. I think that a ruling from this court, however, that would grant what they're asking for, which would be a blanket five-second carte blanche, would send a very chilling message to the rest of law enforcement in our Sixth Circuit. Because how would they then make a factual distinction in every single case that would come forward where there is an issue of unreasonable use of deadly force? You would agree we can look at the videos, right? That's correct. Setting aside Officer Murphy, your complaint reads as if every shot was excessive. But even Judge Waverly in the district court suggested that they had probable cause to fire. Because the video quite clearly shows the decedent taking a step and acting like he's pointing a gun at them. And so what I'm struggling with is your complaint is blatantly contradicted by the video. But then the district court suggested that we just don't know if some of the officers may be shot after the threat had gone away. And it's not clear to me that you've alleged this two-step. So it's not obvious to me why your complaint states a claim with respect to anybody other than Officer Murphy. Because it says everybody acted excessively, but when I watched the video, at least the initial volley seemed reasonable to me. I agree with the district court. Your Honor, if I may just point this out. I don't believe that the district court went ahead and excused the initial volley. I believe that the district court said that at this stage, and we're remembering they followed a Rule 12. They did not follow Rule 56. Judge Crenshaw goes over and over inside of his memorandum opinion and he cites to the Wesley case and says it's inappropriate. Because there needs to be more factual development. He states, as such, further factual development is necessary to properly consider the individual defendant's qualified immunity claims. When your Honor brings up... Why don't you... Why shouldn't you have some type of duty to plead facts that would suggest the other officers plausibly continued to shoot excessively? I believe any plaintiff in our position would struggle the same way that the district court struggled, which is we have one video. And your Honor, let's take us back to when we filed our first original complaint, which is over two years ago. The only basis that we had to file and craft the complaint was media outlet sources that were released by the defendants. So right out of the gate, we were operating under a position of having videotape evidence that was heavily doctored. It was completely within their control, and they disseminated that to the general public. We then simply could do the best that we possibly could. Judge Crenshaw, in his ruling in his memorandum opinion, said that one or more of the officers may have continued to shoot him gratuitously after he became incapacitated. So I believe that the district court is having the same problems that we are. So that's... What I'm struggling with is what should be... So I have question one. Again, setting aside Judge Murphy, I have question one. What are... What's that? Officer Murphy. I knew there'd be a thing. And I got Judge Crenshaw's name wrong, too, so I'm two for two today. Setting aside Officer Murphy, don't you think you have some pleading obligation to plausibly suggest that maybe one of the other officers also gratuitously shot? And then the question would be, what do we do if we don't know which officer it is? But I'm not certain. Maybe it's unfair to you. Maybe you should be able to amend your complaint with the notion that we think that the complaint as written contradicts the video. But it's not clear to me that you got the first step of plausibly suggesting that any of the other officers shot, whatever you want to call it, gratuitously or after the threat had dissipated. Correct, Your Honor. I track where you're going. We think about this case because it's a little bit special because we do have a video. In fact, we have a lot of videos of this shooting. We have the one very particularly from Trooper Edge's dash camera, which is the position for which Officer Murphy comes and stands right beside. We have body camera video from Officer Williams, Officer Kidd, Officer Murphy himself. And so all of those videos have been exclusively in their control at the pleading stage. Now, we think about it from the benefit of having the videos, but what would a plaintiff's attorney do if there were not videos? This case would proceed to a David stage. It would proceed to a discovery stage. It would proceed to getting to do interrogatories and perhaps some depositions. I identify that Murphy is shooting after he's down, but there are other shots. We don't know where those are coming from. What do you do with that at the pleading stage when you're not identifying who it is? I'm genuinely asking. I've been thinking at the same time, and the only explanation is you allow us to proceed to discovery, and we can ask each individual officer, did you perceive a threat after you pulled the first trigger? How many times did you fire? What was going on from your vantage point? They have collapsed this. I'm struggling with this. It is a quandary. In order to get to discovery, you have to plausibly allege facts that might suggest that one of these officers did that. The problem I have is, this is why I'm suggesting maybe you could amend, but the problem I have now is you just allege that every shot was excessive. That just strikes me as blatantly contradicted by the record. We know we can use the video if it blatantly contradicts the allegation. The initial allegation that every shot was excessive strikes me as blatantly contradicted by the video. I agree you may have a theory that some of the other officers continued to shoot, but what do you think? Do you think you need to plead some type of circumstantial facts? One fact that I was thinking of was you said there were five shots in the back, which could suggest that he was down, and maybe that's plausible enough. Can you think of any other facts that would plausibly suggest that are in your complaint that some of the officers? We've been arguing from day one that this is a Fourth Amendment excessive force violation based upon 33 bullets, at least two dozen officers. Twelve of those bullets struck our client. The majority of those bullets struck our client in the back. The response now is not responding, I think, to the point you're making, because he's right. The video blatantly contradicts that every shot fired was excessive. Because you're probably not surprised that we're saying that, you know, we've gotten him in a shooting stance. He looks like he has something in his hand. Those first shots, if it seemed a reasonable officer would take the action. The issue is, once he was down, shots hit him after that. Maybe that gets you some points. That's correct. I think what we're learning from the district court memorandum is that whenever you jump to step two, which is the excessive force after Mr. Eastep is clearly down and incapacitated, if you collapse the case, and remembering that this is a Rule 12, then that bypasses any of the procedural or protocol errors that would have been committed by Metro Police and the other officers. What do you think of my hypo? This might help me, right? So we know that there is one gratuitous shot. And we know that there are potentially ten officers who shot it. Do you think you could sue all ten officers and say, allow us to get discovery? We know that you've plausibly pleaded a gratuitous shot. We just don't know which officer. Do you think it depends on the number of officers? Like, I do not. Again, I don't know what the rule should be. We have law students here who have no doubt read Summers versus Tyson in torts class. I think we start from the very beginning of this. And I think the very beginning is we had a man that was committing no crime, that was not fleeing. He was in no way a danger to anybody. He was walking down the road. And if you read through in the complaint. But that earlier set of factual circumstances doesn't resolve this conundrum. So maybe everything was even messed up beforehand, and maybe things were via protocol or things like that. But we still have a question about who shot. There's multiple segments. So who cares about the multiple segments? I'm giving you the key fact for you, which is there was a gratuitous shot. And we just don't know who it was. And I'm just curious on what we think the legal principles should be at the pleading stage. I mean, is it plausibility percentage? If we think it's three, then that's enough. If it's 10, that's too many. That doesn't strike me. Can it be plausible to everyone who drew a gun and shot at all? Right. Whereas maybe it's not plausible to people who didn't even have a gun drawn and didn't shoot. Or like, how do we how do we assess plausibility? We never named any police officer who did not fire a weapon that day. And there could have been multiple folks that were also liable for this that could have taken on a supervisory role. We did not do that. We started backwards from the position of Officer Murphy clearly exercised excessive force. He should have used restraint and he did not. We then worked our way backwards. And we started thinking about this from a perspective of is 33 shots at somebody that we know is unarmed. I'm with the bench because I have thought about this as well. What should an officer have done in that split second decision? Our client made a mistake. Our client made a gesture. And we're owning that. He made a gesture that he should not have. But to go ahead and say that everything that leads up to that man making that one mistake bypasses and excuses the enormity of mistakes that were made during the preceding 40 minutes of this standoff. Because when you have more officers, when you have more showing of force, there were police helicopters flying. When you have an incredibly public daylight scenario like on the side of Interstate 65, we're arguing that those first shots should never have occurred. Landon Eastet made one critical mistake and that was he made the gesture. But those... Your Honor, I think that to make that determination at this stage, at the Rule 12 stage, is premature. We would like to go in and figure out what did these individual officers perceive. We could see clearly from the video they are yelling cease fire. One officer even uses a profanity. He says, GD, afterwards, he's expressing his displeasure. Officer Williams, you can see, is visibly shaken. He's crying. He's going over to the guardrail. He's kicking the guardrail. Officer Murphy goes up to him and tries to cheer him up. We know that there are officers who, if we were to put them to deposition, I have a feeling that they're not going to toe the thin blue line. I think that they're going to say, we could have avoided this. When we start talking about how easily it would have been to use less lethal forces, we put that inside of our brief. You can clearly see through some of our photographs that we captured in our brief that the officers were equipped with less lethal means and they never even attempted to use those. A bear spray, a mace, a rubber bullet, our expert, which we have hired, indicates that this is one of the most disastrous cases for police misconduct leading up to the shots. Now, they have filed a Rule 12. We argue that the Rule 12 should be denied. We argue that this case should go forward, but we're asking the court not to do what was done in the Hood decision. Hood decision, they said, yeah, excessive force, too many shots at the end, but the initial encounter was justified. We're saying, were this a Rule 56? Were you being presented with contradictory affidavits, some from us, some from them? Perhaps officers who have testified indicate that, no, we knew we didn't need to shoot this guy. These officers on the side of the road had no idea why Mr. Estep was being surrounded, had no idea. Okay, thank you. Thank you. You can start, maybe, if you have any thoughts on the hypos we just talked about, because that's the thing that I'm probably most interested in, which is this pleading standard for when you have potential gratuitous force, but you don't know the officer who engaged in it. Your Honor, I'm not aware of any case that directly addresses that. But when you look back at Iqbal, Iqbal is all about a specific claim against the specific individuals. So there, the plaintiff had alleged all manner of problems with his confinement and that there was a policy for the FBI to clear high-interest individuals. But his claim was they racially discriminated against me. Well, one didn't follow from the other. And the court said, you have to tell us what these defendants did wrong, and you have to state a plausible claim against these defendants. Here, we don't have a plausible claim. We have speculation. Can you actually answer Judge Murphy's hypo? If there is a clearly gratuitous shot 30 seconds after someone is clearly down, clearly immobilized, clearly not threatening, deadly force against anyone, and there are three officers there, maybe they all have their guns drawn, but there's one bullet. We don't know who shot it. Are you saying that there's no plausibility and the case gets dismissed against all three of them at the 12B stage? I think that the answer is yes, Your Honor, and I don't have a case site for me. How would the plaintiff have the information about who shot? So I also want to point out that that hypothetical is not the case here. Right, but that hypothetical that Judge Murphy has asked gets to the underlying idea of how do we deal with these situations where there are, you know, perhaps gratuitous shots and we don't know who they're from because a lot of officers have fired their weapons. Correct, Your Honor, and I recognize the quandary that that puts plaintiffs that could put plaintiffs in. But turning to the facts of our case to officer or apologize, Judge Murphy's case, I made the same mistake here. The video does blatantly contradict what the plaintiff said happened. And so those first shots are constitutional. During plaintiff's entire argument, he didn't cite a single case, a single case that would find that the officers couldn't reasonably perceive that Mr. Estep posed a threat. And he speculated about what these officers knew and what their subjective intent was. The Fourth Amendment inquiry is a reasonable one, so not a subjective one. What will change between the motion to dismiss stage and summary judgment since we have the video is not much. We would ask that this court reverse the district court grant qualified immunity and dismiss the case. We have five additional shots. Wouldn't it be plausible that in between now and summary judgment, the discovery might exist with bullets, identifying which weapons they came from, getting more information and developing so that you can say, oh, OK, we don't know who our pilot is. We don't see it. This guy, this guy, couldn't that happen? I don't believe so, Your Honor. I would also direct your honor to the plaintiff's complaint where it quotes extensively from the TBI report, which is about an 800 page report. And that's where they get the information about who fired how many bullets or who fired how many how many shots. So I think that the plaintiffs could have pled that information if they wanted to. And the fact that they didn't is telling. Thank you. Thank you both. The case will be admitted and can call the next case.